**[Cite as *Brunswick Ltd. Partnership v. Brunswick*, 2024-Ohio-3351.]**

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

BRUNSWICK LIMITED PARTNERSHIP

Appellee

v.

CITY OF BRUNSWICK

Appellant

C.A. No. 2023CA0076-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No. 22 CIV 0746

DECISION AND JOURNAL ENTRY

Dated: September 3, 2024

---

STEVENSON, Presiding Judge.

**{¶1}** Defendant-Appellant City of Brunswick ("City") filed a two-pronged appeal from the Medina County Court of Common Pleas judgment that: (1) denied its motion to dismiss Plaintiff-Appellee Brunswick Limited Partnership's ("BLP") administrative appeal for lack of subject matter jurisdiction, and (2) reversed the decision of the City's Board of Zoning Appeals (the "BZA") that upheld the denial of BLP's request for a building permit. For the reasons set forth below, we affirm the trial court's judgment.

I.

**{¶2}** BLP owns a retail shopping center known as Laurel Square Shopping Plaza located at 1733 Pearl Road, Brunswick, OH (the "Property"). The Property is zoned "C-G," meaning for general commercial uses pursuant to Chapter 1260 of the City's Codified Ordinances (the "Zoning Code").

**{¶3}** In early 2022, BLP received proposals from First National Bank ("FNB") to construct an Intelligent Teller Machine ("ITM") on the Property. Unlike a traditional Automated Teller Machine ("ATM"), an ITM performs 99 percent of what a brick-and-mortar building can in addition to having a live teller on a screen and extended hours. The parties agree that FNB is an FDIC insured national banking organization that operates in the State of Ohio.

**{¶4}** The City's Division of Building denied BLP's permit application. BLP appealed the denial to the BZA. Following a hearing, the BZA also denied the permit application, stating in its letter of decision to BLP that the proposed ITM "is not a permitted accessory use, as there is no principally or conditionally permitted Financial Institution" on the Property.

**{¶5}** BLP filed a notice of appeal with the Medina County Court of Common Pleas. The City moved to dismiss for lack of subject matter jurisdiction, asserting that BLP failed to perfect the appeal as required by R.C. 2505.04 and R.C. 2505.07; specifically, that BLP did not file a written notice of appeal with the proper administrative entity, the BZA. BLP opposed the motion. The trial court denied the City's motion to dismiss, finding that the City did not establish that the appeal was untimely filed because the notice of appeal was mailed to the BZA at the same address set forth on the letterhead of the BZA's decision, and was received by the BZA secretary by the thirty-day deadline as required pursuant to R.C. 2505.07.

**{¶6}** The trial court then proceeded to the merits of the appeal. Both parties filed briefs, and the trial court took the matter under advisement. The trial court reversed the BZA's denial of BLP's permit application as arbitrary and unreasonable.

**{¶7}** The City timely appealed and asserts two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE COURT OF COMMON PLEAS WAS WITHOUT SUBJECT MATTER JURISDICTION TO HEAR BLP'S ADMINISTRATIVE APPEAL FROM THE DECISION OF THE BZA BECAUSE BLP FAILED TO PERFECT ITS APPEAL BY FAILING TO FILE WITH THE BZA A NOTICE OF APPEAL WITHIN THIRTY DAYS FROM THE ENTRY OF THE FINAL ORDER OF THE BZA ON AUGUST 15, 2022.**

**{¶8}** The parties do not dispute that R.C. 2505.07 provides that an appeal from an administrative decision of a board of zoning appeals shall be perfected within thirty days of the entry of the final order of that decision. With respect to the notice required to perfect an appeal, R.C. 2505.04 provides in relevant part as follows:

> An appeal is perfected when a written notice of appeal is filed, in the case of an appeal of a final order, judgment, or decree of a court, in accordance with the Rules of Appellate Procedure or the Rules of Practice of the Supreme Court, or, in the case of an administrative-related appeal, with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved.

**{¶9}** Thus, an appeal is perfected if a written notice of appeal is filed with the entity whose order is being appealed, in this case the BZA, within thirty days after the final order is issued. *Chapman v. Hous. Appeals Bd*., 1997 WL 537651, *3 (9th Dist. Aug. 13, 1997). "The language used in the statute clearly and succinctly requires that the notice of appeal be filed *with* the board appealed from, as opposed to the court appealed to." (Emphasis in original.) *Guysinger v. Chillicothe Bd. of Zoning Appeals*, 66 Ohio App.3d 353, 357 (4th Dist. 1990).

**{¶10}** It is also well-settled that perfecting an administrative appeal under R.C. 2505.04 and 2505.07 is jurisdictional. "[T]he filing of notice of appeal under R.C. 2505.04 is essential in order to vest the common pleas court with jurisdiction over an administrative appeal, and [] the failure to properly perfect an appeal may not be waived." *Chapman at* *2. "If an administrative

appeal is not so perfected, the common pleas court lacks jurisdiction, and the appeal must be dismissed." *Skrzypek v. WOIO TV 19*, 2002-Ohio-3033, ¶ 12 (9th Dist.)

**{¶11}** This Court reviews a trial court's decision regarding subject matter jurisdiction de novo. *Helms v. Dept. of Neighborhood Assistance*, 2021-Ohio-2667, ¶ 6 (9th Dist.), citing *Servpro v. Kinney*, 2010-Ohio-3494, ¶ 11 (9th Dist.). "'A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination.'" *A. Morgan Bldg. Group, LLC v. Owners Ins. Co*., 2023-Ohio-3133, ¶ 5 (9th Dist.) quoting *State v. Consilio*, 2006-Ohio-649, ¶ 4 (9th Dist.).

**{¶12}** Here, the hearing before the BZA took place on August 15, 2022. That same day, the BZA adopted a resolution denying BLP's permit application. According to the affidavit of Ms. Jennie Lods, secretary of the BZA, on August 20, 2022, she mailed notice of the BZA's decision, a letter dated August 16, 2022, to BLP. The letter is written on the City's letterhead stationery which is captioned in bold at the top, "CITY OF BRUNSWICK." Printed at the bottom of the letter is the address, "4095 CENTER ROAD · BRUNSWICK, OHIO 44212." The letter also included a copy of the BZA's certificate attesting that the decision was filed in the official record of the BZA on August 15, 2022, and provided instructions for appealing the decision to the trial court.

**{¶13}** This Court has repeatedly held that the thirty-day period under R.C. 2505.07 begins with the mailing of the notice of the agency's order. *See Chapman*, 1997 WL 537651, at *3 ("a board enters its final order for purposes of perfecting an appeal when it sends written notification of its decision to the party."); *Farinacci v. Twinsburg*, 14 Ohio App.3d 20 (9th Dist. 1984) ("A board of zoning appeals entered its final order, for purposes of perfecting an appeal to the trial court under R.C. 2505.07, at the time it sent written notification of its decision to the applicant,

and not at the time the minutes of the board's meeting were filed."); *Cornacchione v. Akron Bd. of Zoning Appeals*, 118 Ohio App.3d 388, 391 (9th Dist. 1997) (the time to appeal does not begin to run until a copy of the final decision is mailed to the interested party).

**{¶14}** We have noted an exception to the mailing requirement when the property owner was provided with both verbal notice as well as a physical copy of the board's final written order during the hearing before the board concerning the property. *See Chapman* at *3. However, that is not what transpired here.

**{¶15}** Therefore, in this case, the deadline for perfecting the appeal under R.C. 2505.07 did not begin to run until August 20, 2022, the date the City mailed its final decision to BLP. Thus, in order to be timely, BLP's appeal must have been "filed" with the BZA by September 19, 2022, which is thirty days from August 20, 2022. R.C. 2505.04.

**{¶16}** BLP filed its notice of administrative appeal with the Medina County Clerk of Courts on September 14, 2022. The certificate of service attached to the notice of appeal and signed by BLP's counsel attested that a copy had been sent by certified U.S. mail to: "CITY OF BRUNSWICK, OHIO, 4095 Center Road, Brunswick Oh. 44212, Attn: Legal Department." BLP offered no exhibits establishing how it attempted to serve the City. However, in addition to the certificate of service on the notice of appeal, the record does contain some evidence of service of notice. The Trial Court's docket, entry number two, states that on September 15, 2022, "NOTICE OF ADMINISTRATIVE APPEAL [WAS] SENT TO CITY OF BRUNSWICK, OHIO VIA CERT[IFIED] MAIL RET[URN] REC[EIPT] REQ[ESTED]." The USPS certified mail receipt stapled to the notice of appeal and postmarked September 15, 2022, shows that it was sent to: "City of Brunswick, Ohio, 4095 Center Rd, Brunswick, Oh. 44212" without specifying a particular

department. The USPS tracking attached to the trial court's order denying the motion to dismiss shows that it was delivered to that address on September 19, 2022.

**{¶17}** There is no dispute that the notice was received by the City of Brunswick on September 19, 2022. According to the affidavit of Ms. Janet McCollom, Administrative Assistant in the City's law department, on Monday, September 19, 2022, she "found at [her] desk an envelope . . . which contained the Notice of Appeal . . ." which she stamped "Received Sep 19 2022 . . . ." The affidavit of Ms. Lods, secretary of the BZA, states that:

> on or about September 19th or 20th, 2022, I received from the City of Brunswick Law Department a hard copy of the Notice of Administrative Appeal . . . which was time-stamped by the Medina County Clerk of Courts on September 14, 2022, and was also stamped "Received Sep 19, 2022", apparently by someone in the Law Department, which has a stamp of the type used to stamp that document[.]

**{¶18}** The City argues that BLP's service on the City's legal department was insufficient to perfect its appeal under R.C. 2505.04 and 2505.07, and therefore, the trial court did not have subject matter jurisdiction over BLP's appeal and should have dismissed it. We disagree with the City because it overlooks the BZA's actual receipt of the notice as well as the purpose of the notice of appeal.

**{¶19}** The Ohio Supreme Court has held that timely receipt of the notice of appeal by the entity from which the appeal is taken meets the requirements of jurisdiction under Chapter 2505. In *Welsh Dev. Co., Inc. v. Warren Cty. Regional Planning Comm.*, 2011-Ohio-1604, it held that an administrative appeal may be perfected under R.C. 2505.04 if the clerk of courts rather than the appealing party serves upon the administrative agency a copy of the notice of appeal filed in the court of common pleas syllabus. *Id.* at syllabus. The *Welsh* Court emphasized that "[w]e have long held that the purpose of a notice of appeal is to inform the opposing party of the taking of an appeal." *Id.* at ¶ 29.

**{¶20}** In *Welsh,* the property owners' complaints and notices of appeal that were filed in the common pleas court contained a praecipe for the clerk to serve the administrative body at issue, the planning commission, by certified mail. *Id*. at ¶ 31. The *Welsh* Court found that "[b]ecause copies of the notices of appeal and complaints were *delivered timely* to [the planning commission], they were 'filed' based on our definition of the term . . . ." (Emphasis added.) *Id.* The *Welsh* Court concluded that:

> Furthermore, the service of the notice of appeal served its purpose because it informed and apprised WCRPC of the administrative appeal by Welsh and the property owners. It is undisputed that the clerk of courts served WCRPC and that WCRPC received a copy of the notices of appeal and the complaint within the 30-day period prescribed by R.C. 2505.07. *Because WCRPC received notice of the appeal within the prescribed time to file an administrative appeal, we hold that Welsh and the property owners perfected their appeal pursuant to R.C. 2505.04.*

(Emphasis added.) *Id*. at ¶ 32. Therefore, the salient question in determining whether the appeal was perfected under R.C. 2505.04 is whether the notice of appeal was timely received by the entity from which the appeal is being taken. *Id.*

**{¶21}** As noted above, in the instant case the notice of appeal was mailed to the City's general address: City of Brunswick, Ohio, 4095 Center Rd., Brunswick, OH 44212. That is also the *only* address that was printed on the BZA's August 16, 2022, letter to the BLP announcing its decision to deny the permit. Thus, even though BLP's certificate of service did not specifically name the BZA as the receiving entity, the notice was mailed to the address that the BZA represented was its primary mailing address. Notably, the City's application for a building permit shows the address as "City of Brunswick, Division of Building, 4095 Center Road, Brunswick Ohio 44212[,]" and references various sections of the Zoning Code, yet another representation by the City that the contact information for the department that handles building and zoning issues is the same as the City's general address. As the USPS tracking notice shows that the notice of

appeal was delivered to that address on September 19, 2022, we conclude that timely receipt at the address provided to BLP by the City was sufficient to establish jurisdiction.

**{¶22}** Therefore, in accordance with *Welsh*, BLP's notice of appeal was timely received by the BZA within the thirty-day period prescribed by R.C. 2505.07 for BLP to file an administrative appeal, and thus, comports with the purpose of the statue that the BZA was "informed and apprised" of the administrative appeal. *Welsh* at ¶ 32.

**{¶23}** Accordingly, based on the foregoing, the trial court did not err in denying the City's motion to dismiss BLP's administrative appeal. The City's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**BECAUSE THE PLAIN LANGUAGE OF SECTION 1242.02(92) OF THE ZONING CODE OF THE CITY OF BRUNSWICK DOES NOT INCLUDE A FREE-STANDING AUTOMATED TELLER MACHINE ("ATM"), INTERACTIVE TELLER MACHINE ("ITM"), OR REMOTE SERVICE UNIT ("RSU") IN THE DEFINITION OF A "FINANCIAL INSTITUTION," THE TRIAL COURT ERRED IN NOT APPLYING THE PLAIN LANGUAGE OF THE ORDINANCE AND THE TRIAL COURT'S FINDING THAT THE BZA'S DECISION WAS ARBITRARY AND UNREASONED IS AN ABUSE OF DISCRETION**.

**{¶24}** In its second assignment of error, the City argues that the trial court abused its discretion by holding that the BZA arbitrarily and unreasonably denied BLP's permit application because in the City's view, the plain language of Section 1242.02(92) of the Zoning Code does not include a free-standing ITM in the definition of a "Financial Institution." We disagree.

*Standard of Review*

**{¶25}** In an administrative appeal under Revised Code Chapter 2506,

> the common pleas court is authorized to reverse a final decision of a board of zoning appeals if, after a review of the complete record, it finds that the board's 'decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'

*Willow Grove, Ltd. v. Olmstead Twp. Bd. of Zoning Appeals*, 2022-Ohio-4364, ¶ 16, quoting R.C. 2506.04.

**{¶26}** The appellate standard of review is as follows:

> The court of appeals' standard of review under R.C. Chapter 2506 is more limited. *Henley* [*v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142], 147 [(2000)], citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34,(1984). The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence. *Id.* at 147, quoting *Kisil* at 34, fn. 4. Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion. *Kisil* at 34, fn. 4. The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id*. at 34.

*Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 14

**{¶27}** In general, zoning ordinances are to be construed using the standard rules of statutory construction, meaning that when the ordinance's text clearly and unambiguously reveals intent, courts must apply the ordinance as written. *Wilson v. Lawrence*, 2017-Ohio-1410, ¶ 11. Because zoning regulations restrict the use of real property, in derogation of the common law, zoning regulations should be strictly construed in favor of the property owners. *Terry v. Sperry*, 2011-Ohio-3364, ¶ 19.

**{¶28}** The trial court concluded that the BZA's denial of BLP's permit application was not "tethered to a clear standard set forth in the Zoning Code," and therefore, "its decision was arbitrary and unreasoned and, therefore, impermissible." In so concluding, the trial court noted that neither party disputed that the City's proposed ITM would be operated by FNB, a "bank organization that qualifies as a 'Financial Institution' under the Zoning Code." It further noted that the Zoning Code's definition of "Financial Institution" "omits any qualifiers, limitations, or exclusions" to the form of the "Financial Institution;" and therefore, the meaning is broad and permits any physical form. The trial court also emphasized that the BZA's decision failed to "set

forth a cognizable rationale for denying the permit application[,]" referencing in particular a statement made by a member of the BZA at the hearing that the BZA had decided "'to not permit those types of things.'" In sum, the trial court concluded that, construing the Zoning Code strictly in favor of BLP, the BZA exceeded its authority and looked beyond the plain language of the Zoning Code to justify its denial of the permit application.

**{¶29}** The City argues on appeal that the proposed ITM, as a free-standing brick-and-mortar electronic teller machine, does not meet the definition of a "Financial Institution" and instead, is an "accessory use" under the Zoning Code. The Zoning Code defines "accessory use" as "[a]ny use or structure which is accessory and incidental to any of the C-G district principally or conditionally permitted uses." The City argues that using a common sense, ordinary meaning definition leads to the conclusion that a "Financial Institution" is not equivalent to an ITM just because it is capable of performing basic banking functions, and therefore, is not a principally permitted use under the Zoning Code.

**{¶30}** BLP argues that the ITM meets the definition of a "Financial Institution" and is a principally permitted use because: 1) the ITM will be operated by FNB, which is undisputedly a "Financial Institution"; 2) the ITM will perform 99 percent of the same functions as a traditional brick-and-mortar bank; and 3) the Zoning Code does not define or limit the form taken by a "Financial Institution" to a particular type of structure. We agree with BLP.

**{¶31}** In a C-G zoned area, the use of a "Financial Institution," as defined by Section 1260.02(c) of the Zoning Code, is a principally permitted use that does not require any special consideration or other conditional use permits. Section 1242.02(92) of the Zoning Code, as in effect at the time of this action, defined a "Financial Institution" as a "bank organization or holding company of a bank organization, as defined in [R.C. 5726] . . . ." R.C. 5726.01(B)(1) defines

"bank organization" as "[a] national bank organized and operating as a national bank association pursuant to the 'National Bank Act,' . . . ." According to the testimony at the hearing, FNB is an FDIC insured national banking organization, and the parties agree that it qualifies as a "Financial Institution." Therefore, the ITM is owned and operated by a "Financial Institution."

**{¶32}** The Zoning Code is silent as to any drive-up banking machines such as an ITM. Since the parties agree that FNB, the proposed ITM owner and operator, is a "Financial Institution," and because the form taken by a "Financial Institution" is not restricted under the unambiguous, plain language of the Zoning Code, we agree with BLP that, construing the Zoning Code strictly in BLP's favor, the ITM is contemplated under the Zoning Code as a "Financial Institution," and therefore, qualifies as a principally permitted use. The ITM, which performs substantially the same functions as a brick-and-mortar branch but with a virtual presence, will operate as an extension of FNB, much in the same way as a traditional bank branch. Based on the plain language of the Zoning Code in defining the requirements of a "Financial Institution," an ITM cannot reasonably be excluded from the definition.

**{¶33}** Accordingly, based on the foregoing, the trial court did not err in determining that the BZA's decision was arbitrary and unreasonable. *Independence*, 2014-Ohio-4650 at ¶ 14. Therefore, the City's second assignment of error is overruled.

III.

**{¶34}** Based on the foregoing, the City's assignments of error are overruled, and the judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT


CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

R. TODD HUNT and LISA A. MACK, Attorneys at Law, for Appellant.

CHARLES A. NEMER, ADAM G. GLASSMAN, and TAYLOR S. MEHALKO, Attorneys at Law, for Appellee.