[Cite as *Hoytville v. Kaufman*, 2025-Ohio-1097.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Village of Hoytville                      Court of Appeals No.  WD-24-003

       Appellant                             Trial Court No. 2021 CV 0361

v.

Jacob Kaufman, et al.                   **DECISION AND JUDGMENT**

       Appellees                         Decided: March 28, 2025

* * * * *

Drew A. Hanna, for appellant

James A. Hammer, for appellee.

* * * * *

**DUHART, J.**

**{¶ 1}** Appellant, Village of Hoytville ("the Village"), appeals from a judgment by the Wood County Court of Common Pleas: 1) reversing the Village of Hoytville Board of Zoning Appeals's ("BZA's") decision denying appellees Jacob Kaufman and National Homes, LLC's request for a variance; and 2) denying the Village's request for injunction to prevent appellees from placing a mobile home on certain real property located in the Village. For the reasons that follow, we reverse the judgment of the trial court.

**Statement of the Case and Facts**

{¶ 2} Disagreements arose between the Village and appellees regarding the use of four contiguous parcels located at 2589 and 2601 N. Main Street, Hoytville, Ohio, with parcel numbers for the subject parcels ending in 1000, 2000, 3000, and 4000, respectively.

{¶ 3} The Village initiated litigation against appellees when it filed case No. 2021CV0361 on October 5, 2021. In the Village's Second Amended Complaint, filed on July 12, 2023, the Village sought, among other things: 1) to compel appellees to remove a mobile home that had been placed on the portion of the property with a parcel number ending in 4000; and 2) to enjoin appellants from constructing, erecting, building, or improving the portion of the property with a parcel number ending in 1000. As grounds for relief, the Village asserted violations of various Village Zoning Ordinances.

{¶ 4} Also before the trial court was case No. 2023CV0355, which was an administrative appeal that appellees filed pursuant to R.C. 2506.01 et seq. on July 5, 2023. In that case, appellees sought an order reversing the decision of the BZA denying appellees' March 23, 2023 application for a zoning permit or, alternatively, an order reversing the BZA decision denying appellees' request for a variance. Although appellees failed to serve notice on the Village as required under R.C. 2505.04, counsel for the Village asserted that the Village waived service in this case.

{¶ 5} The trial court consolidated the two cases. Because there existed no transcript or recording of the appeal hearing that was conducted by the BZA on May 30, 2023 -- in fact, there was no BZA record that was filed in the trial court -- the trial court

2.

scheduled a hearing to review the evidence in the administrative appeal de novo. During the same hearing, the trial court heard the claims asserted in case No. 2021CV0361.

{¶ 6} At trial, held on December 4, 2023, the Village presented witness testimony from Peg Phillips, the Village's former treasurer and clerk, and Justin Gallagher, the Village's former mayor and council member. Appellee Kaufman testified on behalf of appellees.

{¶ 7} Undisputed testimony by the witnesses established the following. Prior to August 2020, Kaufman removed a pre-existing, dilapidated mobile home from the property with the parcel number ending in 1000. On July 31, 2020, the Village issued a stop work order for 2589 and 2601 N. Main Street and gave written notice that Kaufman had "committed several violations" of Village zoning ordinances "by beginning construction on multiple abandoned buildings on [the subject property] including placing a mobile home [on the property with a parcel number ending in 4000] without obtaining any written permits which is required by the Ordinance." When Kaufman refused to remove the mobile home despite the stop work order, the Village filed suit on October 5, 2021.

{¶ 8} On March 22, 2023, Kaufman applied for a zoning permit requesting a "mobile home changeout" on the property with a parcel number ending in 1000. He listed appellee National Homes, LLC as the owner of the property and himself as the company's agent.

{¶ 9} In a document entitled "Plaintiff's Denial of Application for Zoning Permit by Defendant Dated March 22, 2023" -- which was initially filed, not with the BZA but

3.

with the trial court, in case No. 2021CV0361 -- the BZA represented that it denied Kaufman's application for multiple reasons, including "Article IV of the Zoning Ordinance, Section 6, which requires 'any replacement Mobile Home to be 10 years or less of the current calendar year.'" Another reason for the denial was violation of Article V of the Zoning Code, because Article V required a lot size of 50 feet, whereas appellee's property was "only 33 feet wide." Still other reasons for the denial involved alleged omissions and mistakes in the application document itself.

{¶ 10} Kaufman appealed the denial of his zoning permit to the BZA and, alternatively, requested a variance. The BZA denied the appeal on June 6, 2023. Kaufman then appealed to the Wood County Court of Common pleas, where his case and the case that had been filed by the Village were consolidated.

{¶ 11} Kaufman testified that the mobile home he wished to place -- although built in 1996 and thus older than 10 years old -- was in good condition and was meant to replace the previously existing mobile home structure that "was not in any condition of habitancy." Kaufman described the new unit as having three bedrooms, two bathrooms, "laundry…[a] full utility room, living room…dining room [and] kitchen combo."

{¶ 12} In his application to the BZA, Kaufman requested to place the new trailer in the same area of the property where the old trailer had been located, leaving -- as with the old trailer -- 30 feet of frontage, rather than the 50 feet that was required by Village ordinance. Kaufman testified that if he were to place the new trailer so that it had 50 feet of frontage, he would have to place the trailer on top of a sewer pit, which is not permitted. Kaufman explained, "Sewer pits emit gas, radon gas, and bad gasses that could

4.

potentially, if you have a crack in the lid or whatever if the lid malfunctioned that could leak toxic gases into your house." Kaufman testified that if the new mobile home were placed where the old one had been, he would be able to use the existing utility hook-ups.

{¶ 13} Kaufman further testified that given the size of the lot, placement of a mobile home is not just the best but is "pretty much the only" residential use for the property. He stated that if he were not permitted to place the mobile home, it would create a hardship for him as he had nowhere else to place the mobile home, and because he had specifically purchased the mobile home in order to accommodate the lot size in question. He further stated the placement of the mobile home, if permitted, would have no effect of obstructing or limiting light or air to adjoining parcels. Nor would it substantially increase the congestion from public streets or increase the nature of any fire hazard. He also stated that placement of the mobile home would not endanger any public safety. Noting that there are other mobile homes in the Village, he testified that placement of the mobile home would not diminish property values in the area.

{¶ 14} In answer to questioning by the trial court, Kaufman testified that without the variance, the subject property would be worthless because there is "no way you can build on it." He noted that the subject property has its own address and "already pertained to a residence before." The variance Kaufman requested related only to the front yard setback requirement. He stated that if the variance were granted such would "keep all the properties in a line like they used to be instead of having somebody's house completely in somebody's back yard."

5.

{¶ 15} Kaufman testified that the granting of the variance would in no way affect the delivery of water or sewer services, because the new trailer was "the exact same size as the trailer that was on [the property] before," and would have "the exact same hook-ups as the previous trailer." On the other hand, he stated, if the variance were not granted "then the sewer and utilities would not be in the area that could be used."

{¶ 16} Upon further questioning by the court, Kaufman clarified that without the variance there is no way he could use the property in question.

{¶ 17} At the end of the hearing, the trial court granted the Village's request for an injunction to compel appellees to remove the mobile home from the parcel ending in 4000 but denied the Village's request for an injunction preventing appellees from constructing, erecting, building, or improving the portion of the property with the parcel number ending in 1000. In addition, the trial court determined that the BZA's decision denying appellees' request for a variance was arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence. Explaining its reasoning, the trial court stated:

> In regard to the variance, the Court is going to grant the administrative appeal finding that the Village did act in a manner that was unconstitutional, illegal, arbitrary, capricious, unreasonable, unsupported by a preponderance of substantial, reliable, and probative evidence.
>
> Now, what that means is that the Defendant was asking for an area variance. The fact of the matter is that the evidence presented today established that the highest and best use and the use that would be available for that would be to replace the trailer that was there before under the request that had been made with the 30-foot setback…. And so the Court is going to find that the Defendant should have been granted –

I'm going to grant the administrative appeal, allow the variance.

…

So the Court will issue an order…. This was a request for an area variance. If a person has encountered practical difficulties with the use of the property, the reviewing body can decide to grant a variance based upon whether the property in question will yield a reasonable return or whether there would be any beneficial use of the property without the variance. The evidence has shown there would be no practical use of the property without the variance. Whether the variance is substantial. It is going to have a trailer occupying the same place that the previous trailer did, so not a substantial request.

Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance. I don't see any evidence to show that there would be any hardship in that regard.

Whether the variance would adversely affect the delivery of governmental services. It would be to the contrary. Without the variance, there wouldn't be those services of water, sewer, et cetera.

Whether the property owner purchased the property with knowledge of the zoning restriction. He did purchase it with the knowledge of the zoning restriction. But he also saw a previous property on there and he improved that to there.

Whether the property owner's predicament feasibly would be obviated through some other method other than a variance. There's been evidence shown that there is no method other than a variance to allow this.

Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. I think that it remains residential, it remains with a mobile home, and it is being used or it can be used by individuals who will occupy it, there by providing a residence for the Village.

{¶ 18} In its written judgment entry, the trial court reiterated its determination regarding the Village's claim for injunctive relief and, further, reiterated that the BZA's decision denying appellees' request for a variance was arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence. Explaining its decision, the trial court specified that "[a]t trial, counsel for [appellant] agreed that area requirements of the Zoning Ordinance were at issue." The court then stated that appellees had established that the area zoning requirements cited in the Village's denial unreasonably deprived appellees of a permitted use of their property. The trial court found no evidence of any adverse effects that could result from a granting of the variance. As stated by the trial court, "[the Village] only argued as to the fear of the Village turning into a 'rural slum.' To the contrary, [Kaufman] removed an old, uninhabitable mobile home, with intent to replace it with a newer, superior one."

{¶ 19} The court added that "the fact that the replacement mobile home is more than ten years old as prohibited by Article IV, Section 6 of the Zoning Ordinance is of no consequence as said section relates only to mobile homes located within 'mobile home parks' by its plain language."

{¶ 20} Finally, the court stated, "to the extent that a variance is necessary as to any use requirements of the Zoning Ordinance, e.g., the placement of a mobile home on property not within a mobile home park, the Court finds that Defendants have established

8.

unnecessary hardship. Kaufman's testimony that no use of the land can be had, and that the property holds little to no value without a variance, was uncontroverted."

{¶ 21} The trial court then entered judgment in favor of appellees and against the Village with respect to the administrative appeal and reversed the BZA's decision denying appellees' request for a variance. The Village timely filed an appeal.

## Assignment of Error

{¶ 22} On appeal, appellant asserts the following assignment of error:

I.    The trial court erred in reversing the Zoning Board of Appeals' decision to deny Defendant's application for a variance allowing the Defendant to place a mobile home on a parcel of land and by denying the Plaintiff's request to enjoin Defendant from violating the Village of Hoytville's Zoning Ordinance.

## Law and Analysis

{¶ 23} Appellant argues in its sole assignment of error that the trial court erred in reversing the BZA's decision to deny Kaufman's application for a variance and by denying appellant's request for an injunction to prevent appellant from placing a mobile home on his property with the parcel number ending in 1000.

## Standard of Review

### a. The Common Pleas Court's Standard of Review of an Administrative Appeal

{¶ 24} Appellees commenced the appeal in the trial court pursuant to R.C. Chapter 2506. R.C. 2506.04, which governs review of administrative appeals, provides:

9.

If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

{¶ 25} It is the trial court's role to "'weigh[] the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board.'" *OMNI Property Companies v. Sylvania Twp. Bd. of Zoning Appeals*, 2022-Ohio-3083, ¶ 28 (6th Dist.), quoting *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 13. (Additional citations omitted.) "In fulfilling its role under the statue, the common pleas court begins with the presumption that the board's decision is valid; the appealing party has the burden to demonstrate otherwise." *OMNI* at ¶ 28, citing *JSS Properties, II, LLC v. Liberty Twp. Bd. of Zoning Appeals*, 2018-Ohio-1492, ¶ 6 (5th Dist.).

**b. The Appellate Court's Standard of Review of an Administrative Appeal.**

{¶ 26} Under R.C. Chapter 2506, the court of appeals' standard of review is more limited than that of the trial court. *Id.* at ¶ 29, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, fn. 4 (1984). "The court of appeals reviews the common pleas court's judgment only

10.

on questions of law and does not have the same extensive authority to weigh the evidence." *Id.* Within the scope of those questions of law would be the question of whether the common pleas court abused its discretion. *Id.* "The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence." *Id.* This deferential standard of review in administrative appeals "acts to strongly favor affirmance." *OMNI* at ¶ 29, citing *Cleveland Clinic Found. V. Cleveland Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 30.

**1. The trial court lacked jurisdiction to hear the administrative appeal in this case.**

{¶ 27} The Village, in its response brief, raises for the first time the question of whether the Common Pleas Court had jurisdiction to hear appellants' appeal. Although an appellate court may well refuse to address on appeal any issues that are raised for the first time in a reply brief, *see Trinity Financial Services, LLC v. D'Apolito,* 2024-Ohio-825, ¶ 50, (7th Dist.), "'[a]ppellate courts are required to raise jurisdictional questions sua sponte.'" *Superior Waterproofing, Inc. v. Karnofel,* 2016-Ohio-6992, ¶ 6 (11th Dist.), quoting *Birmingham Assocs., LLC v. Strauss*, 2013-Ohio-4289, ¶ 11 (11th Dist.). Accordingly, we accept this issue for review.

{¶ 28} First, we look to the question of whether appellants perfected their administrative appeal. R.C. 2505.04 provides that "[a]n appeal is perfected when a written notice of appeal is filed, in the case of an appeal of a final order, judgment, or decree of a court, in accordance with the Rules of Appellate Procedure or the Rules of 11.

Practice of the Supreme Court, or, in the case of an administrative-related appeal, with the administrative officer, agency, board, department, tribunal, commission, or other instrumentality involved." R.C. 2505.04.

{¶ 29} In this case, there is no question that appellants failed to serve the Village. "Failure to timely file a notice of appeal under R.C. 2506 divests the trial court of jurisdiction over the appeal." *LaPlant Enterprises v. City of Toledo*, 1988 WL 69147 (6th Dist. June 30, 1988), citing *Roseman v. Reminderville*, 14 Ohio App.3d 124, 126 (1984); *see also, Brunswick Limited Partnership v. Brunswick*, 2024-Ohio-3351 (9th Dist.) (The filing of a notice of appeal under R.C. 2505.04 is essential in order to vest the common pleas court with jurisdiction over an administrative appeal, and the failure to properly perfect an appeal may not be waived. Where an administrative appeal is not so perfected, the common pleas court lacks jurisdiction, and the appeal must be dismissed.) Because appellants failed to serve the Village and, thereby, failed to perfect their appeal, the common pleas court lacked jurisdiction to hear the matter, and the administrative appeal portion of this consolidated case is necessarily dismissed.

**2. Even if the trial court had jurisdiction to hear the administrative appeal, it had no authority to conduct a de novo trial of the issues that were raised in that appeal.**

{¶ 30} As an additional ground for dismissal, the Village argues that because no transcript from the BZA proceedings was ever filed in the trial court, the trial court had no jurisdiction to consider appellants' appeal of the BZA decision.

12.

**{¶ 31}** R.C. 2506.02 provides:

Within forty days after filing a notice of appeal in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the officer or body from which the appeal is taken, upon the filing of a praecipe by the appellant, *shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision.* The costs of the transcript shall be taxed as a part of the costs of the appeal.

(Emphasis added.)

**{¶ 32}** It is undisputed in this case that no record of the administrative proceedings was ever filed in the trial court. As a result, the trial court elected to conduct a de novo trial.

**{¶ 33}** Pursuant to R.C. 2506.03(A), which provides guidelines for the hearing of an administrative appeal:

> (A) The hearing of an appeal taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code shall proceed as in the trial of a civil action, but the court shall be confined to the transcript filed under section 2506.02 of the Revised Code unless it appears, on the face of that transcript or by affidavit filed by the appellant, that one of the following applies:
>
> (1) The transcript does not contain a report of all evidence admitted or proffered by the appellant.
>
> …
>
> (3) The testimony adduced was not given under oath.
>
> …
>
> (5) The officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision.

13.

**{¶ 34}** Thus, the general rule is that a trial court "must decide a case on the merits based on the transcript of evidence submitted by the administrative agency," *Kennedy v. Heath Board of Zoning Appeals*, 2023-Ohio-2987, ¶ 23 (5th Dist.). An exception under R.C. 2506.03 provides that "[i]f any circumstance described in R.C. 2506.03 divisions (A)(1) to (5) applies, the court shall hear the appeal upon the transcript and *additional evidence* as may be introduced by any party." (Emphasis added.) R.C. 2506.03(B). Lacking a transcript of evidence, as required by R.C. 2506.03, a trial court has no basis or authority to proceed with the administrative appeal. *See Grant v. Washington Tp.*, 1 Ohio App.2d 84 (2d Dist. 1963).

**{¶ 35}** Here, there was no record from the zoning appeal filed by the BZA. Thus, the trial court did not review the administrative proceedings, but rather, held its own adjudication of appellants' challenge to the zoning requirements and request for variance. A trial court, proceeding under R.C. 2506.01 et seq., has no authority to reverse the decision in an administrative appeal unless the standard of review under R.C. 2506.04 is followed; in this case, the trial court, in the absence of a transcript, was not authorized to conduct a de novo trial of the issues. *See Wickliffe Firefighters Assn., Local 1536 v. Wickliffe*, 66 Ohio App.3d 681 (11th Dist. 1990).

**3. The trial court did not abuse its discretion in denying the Village's request for an injunction preventing appellants from constructing, erecting, building, or improving the property.**

**{¶ 36}** The Village argues that the trial court abused its discretion by denying the Village's request to enjoin appellants from "violating the Village of Hoytville's Zoning

14.

Ordinance." "The decision to issue an injunction lies within the trial court's sound discretion and depends on the facts and circumstances of the case." *Gardner v. Village of Windham*, 2017-Ohio-5632, ¶ 28 (11th Dist.), citing *Perkins v. Village of Quaker City*, 165 Ohio St. 120 (1956), syllabus. "We review a trial court's denial of injunctive relief for an abuse of discretion." *Id.*, citing *Perkins* at 125. "An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Angotti v. Jones,* 2024-Ohio-3222, ¶ 14 (6th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 37}** As indicated above, the trial court found: (1) there would be no practical use of the property without a variance (as testified to by Kaufman in undisputed testimony) ; (2) the variance was not substantial, inasmuch as it would involve a trailer "occupying the same place that the previous trailer did"; (3) there was no evidence to show that the essential character of the neighborhood would be substantially altered or that adjoining properties would suffer a substantial detriment as a result of the variance; (4) the variance would not adversely affect the delivery of governmental services; instead "[w]ithout the variance, there wouldn't be those services of water, sewer, et cetera"; (5) the property owner purchased the property with knowledge of the zoning restriction, "[b]ut he also saw a previous property on there and he improved that"; (6) there was evidence (again in the form of undisputed testimony by Kaufman) that there was no method other than a variance to obviate the property owner's predicament; and, finally (7) the spirit and intent behind the zoning requirement would be observed and substantial

15.

justice done by granting the variance, inasmuch as the property would remain residential and with a mobile home.

{¶ 38} The trial court expressly found that the BZA's decision denying appellees' request for a variance was "arbitrary, capricious, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence." The court further found that the area zoning requirements cited by the Village "unreasonably deprive" appellees of a permitted use of their property and that no evidence was presented as to any adverse effects of granting a variance.

{¶ 39} Upon considering the record of the proceeding, even where much of the trial court's discussion specifically addressed the denial of the variance rather than the request for injunctive relief, we do not find that the trial court abused its discretion in denying the Village's request for an injunction preventing appellants from constructing, erecting, building, or improving the portion of the subject property owned by appellants. We note that on appeal, the Village itself does not separately or distinctly argue the trial court's denial of its request for injunctive relief.

{¶ 40} Arguing against the trial court's decision, appellant asserts that various factors "weigh in favor of the village." Specifically, appellant argues, without citing any additional evidence and in direct contradiction to the evidence presented by Kaufman, that there would be beneficial use of the property even with a restriction against placing mobile homes, because Kaufman "would still be able to build a nonmobile on the property as long as he obtained a permit before doing so." Appellant additionally claims, again without citing any evidence, that the essential character of the neighborhood would

16.

be substantially altered or adjoining properties would suffer a substantial detriment as a result of the variance because "the mobile home being placed in a neighborhood that does not contain mobile homes would substantially alter the character of the streets that do not contain mobile homes." The evidence contained in the record, however, shows that Kaufman intended simply to replace a mobile home that had previously existed on the subject property and, further, that there did exist other mobile homes in the Village, some of which were owned by Village officials.

{¶ 41} Next, appellant argues for the first time on appeal that the previous owner of the subject property "abandoned" the "nonconforming use" of the property -- i.e., placement of a trailer -- and that Kaufman had no right to resume that nonconforming use. "[A]rguments a party raises for the first time on appeal are generally barred." *InvesTek Management Services, Inc. v. Tate*, 2024-Ohio-5850, ¶ 21 (6th Dist.). (Additional citations omitted.) Because the Village did not make any argument concerning voluntary discontinuation of nonconforming use in the trial court, we dismiss this argument without further consideration.

{¶ 42} Appellant next points to the trial court's "inaccurate finding" that "Article VI of the village zoning ordinance prohibits mobile homes/trailers that are more than ten years old from being placed in the village of Hoytville only if they are located in mobile home parks." In fact, the trial court accurately found in its written judgment entry that Article IV, Section 6 of the Zoning Ordinance contained this specific prohibition. Violation of Article IV, Section 6 was cited by appellant as a reason for denying appellees' application for the zoning permit. Thus, the trial court properly concluded that

17.

"the fact that the replacement mobile home is more than ten years old as prohibited by Article IV, Section 6 of the Zoning Ordinance is of no consequence as said section relates only to mobile homes located within 'mobile home parks' by its plain language." To the extent that this provision may have been superseded by the Village's August 31, 2020 amendment and, thus, was no longer in effect, it was appellant that invited any error in its consideration by the trial court. "Under the invited error doctrine, 'a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make.'" *O'Malley v. Laborers' Intl. Union of North America*, 2024-Ohio-3103, ¶ 17 (8th Dist.).

{¶ 43} Regarding the significance of any "factual error" concerning the necessity for a variance under the zoning ordinance, we note that the trial court expressly determined that even if a variance were required, "Defendants have established unnecessary hardship" by providing uncontroverted testimony that "no use of the land can be had" and that "the property holds little to no value without a variance."

{¶ 44} Finally, appellant claims that the trial court abused its discretion "to the extent that it relied" on Kaufman's statement that he had relied on an assertion by the village mayor that he could place his trailer on the subject property without obtaining a permit to do so. As there is nothing in the record to suggest that the trial court, in rendering its decision, gave any consideration to this particular statement, appellant's argument is dismissed as meritless.

{¶ 45} For the foregoing reasons, appellant's sole assignment of error is found well-taken.

18.

## Conclusion

{¶ 46} The judgment of the Wood County Court of Common Pleas is reversed and remanded to the trial court for an order dismissing the administrative appeal consistent with this opinion. In rendering this decision, we do not disturb the trial court's judgment with regard to the Village's claims for injunctive relief. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.          _____

                                                            JUDGE

Gene A. Zmuda, J.           

Myron C. Duhart, J.           _____
CONCUR.                                           JUDGE

                                                            _____

                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.