[Cite as *State v. Bracey*, 2025-Ohio-2133.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                Court of Appeals No.  L-23-1213

      Appellee                                          Trial Court No.  CR-22-2426

v.

Dominic Bracey                                         **DECISION AND JUDGMENT**

      Appellant                                          Decided: June 17, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and,
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Dominic Bracey, from the August 31, 2023 judgment of the Lucas County Court of Common Pleas.  For the reasons that follow, we reverse the trial court's judgment.

{¶ 2} Bracey sets forth five assignments of error:

I. Trial counsel was ineffective for failing to make an as applied and facial challenge the constitutionality of R.C. . . . 2923.16(B) pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen* or alternatively the court committed plain error in convicting on the unconstitutional charge[.]

II. The only reason that Mr. Bracey did not possess a concealed carry permit, which would have made his firearm possession unquestionably legal, was that he could not afford the application fee: in this circumstance counsel was ineffective for not making an as applied and facial challenge to the statute as violating equal protection under the Ohio and United States Constitution or alternatively plain error should apply[.]

III. The trial court erred in making a finding of guilt following Mr. Bracey's no contest plea as the indictment is insufficient to charge an offense[.]

IV. The trial court's denial of Mr. Bracey's motion to suppress evidence is not supported by competent and credible evidence and is contrary to the evidence presented[.]

V. The trial court erred in not permitting Mr. Bracey to re-open the suppression issue in order to address and challenge the flagrant pretextual nature of the stop here, and its constitutionality under the U.S. Fourth Amendment and the Ohio Constitution's provisions for equal protection[.]

## Background

{¶ 3} According to the record, on the afternoon of April 28, 2022, a marked Border Patrol vehicle was patrolling outside of the Weiler Homes apartment complex in Toledo, Ohio, which was a known high crime area to law enforcement. In the vehicle were Border Patrol Agent Edgell, who was the driver, and Detective Martin with the Toledo Police Department's ("TPD") gang task force, a crime suppression unit. The officers were engaged in a multi-agency crime sweep operation of high crime areas to get drugs and guns. The operation entailed making traffic stops of almost every car that

2.

exited the Weiler Homes, that could lead to possibly drugs or guns. Border Patrol vehicles are not equipped with dash cameras.

{¶ 4} Bracey lived in the Weiler Homes and was leaving his residence to pick up his child when he passed right by and next to the Border Patrol vehicle, which was traveling in the opposite direction. The Border Patrol vehicle made a U-turn and followed Bracey's car for a short time until Bracey was pulled over for allegedly failing to use a turn signal. There is no video footage of the Border Patrol vehicle following Bracey because, again, Border Patrol vehicle are not equipped with dash cameras.

{¶ 5} Detective Martin made contact with Bracey, who had made no furtive movements and did not act in any way to make the detective fearful for his safety. Bracey was asked if he had any guns or drugs in the vehicle. Bracey was cooperative and responded that he had a gun in the pocket of the back of the passenger's seat. Bracey was asked if he had a valid CCW (carrying concealed weapon) permit; he did not. Bracey was removed from the car, searched, handcuffed and arrested. Bracey was cited for failing to use a turn signal, a minor misdemeanor.

{¶ 6} On July 12, 2022, in Toledo Municipal Court, the violation against Bracey for failing to use a turn signal was dismissed upon the recommendation of the prosecutor.

{¶ 7} On August 23, 2022, a Lucas County Grand Jury indicted Bracey on one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), a fourth-degree felony.

{¶ 8} On November 22, 2022, Bracey's defense counsel filed a motion to suppress all evidence found during his alleged unlawful stop. Counsel argued, inter alia, that

3.

"[w]hen a vehicle is stopped, however, for a minor traffic violation, the stop must be limited to the purpose of the stop; officers are not to engage in 'fishing expeditions' on routine traffic stops. *State v. Brown*, 183 Ohio App.3d 640, 2009 Ohio 3803."[1] Counsel asserted the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution stand for the principle that law enforcement officers are not to conduct unreasonable searches and seizures. The State filed an opposition to the motion.

{¶ 9} On January 27, 2023, a hearing was held on the motion, where Detective Martin and Bracey testified. Martin testified, inter alia, that on April 28, 2022, he was with Border Patrol Agent Edgell doing "crime suppression" by "making multiple traffic stops in high crime areas" near the Weiler Homes, and "quite frequently" stopped cars that left the Weiler homes. The officers stopped "almost every car" that left the Weiler Homes, as they conducted a traffic stop if they saw a traffic infraction. The officers would not pull over a vehicle unless there was a traffic infraction or a reason to believe there was criminal activity. Regarding Bracey, Martin saw Bracey in his (Bracey's) car, the officers and Bracey passed each other, and the officers did a U-turn because Bracey left the Weiler Homes, a high crime area. The officers followed Bracey for a time before Bracey was stopped for not using his turn signal.

{¶ 10} Bracey testified, inter alia, that he left his house at the Weiler Homes, and drove from Leach Street to Earl Street, where he turned left, using his blinker. He

---

[1] This citation is incorrect, as noted by the trial court. The correct citation is *State v. Brown*, 2009-Ohio-3804 (6th Dist.).

observed the police car, looked at both of the officers, rode past, and used his turn signal to turn onto Oak Street. About 10 seconds later, the officers were behind Bracey and pulled him over. Bracey testified, "I never committed a traffic infraction. They profiled me. They rolled past me and profiled me and pulled me over within 30 seconds of me getting out of my house." With respect to the gun, Bracey took CCW classes, took the written test and the range test and applied for a CCW license but did not have the money to pay the fee.

{¶ 11} Following the witness testimony, the trial court said to defense counsel, "[T]he State v Brown [sic] case, I'm not able to find it. . . You want me to rely on it, then give me the right citation."

{¶ 12} The trial court then denied the motion to suppress, explaining

I believe the testimony from Detective Martin [(TPD officer)]. Also, I believe there's case law indicating that police officers have legitimate reason to be concerned about the possibility of weapons during a routine stop. I'm going to quote State versus Cavins, C-a-v-i-n-s, Second District, 1999, Ohio App Lexis, L-e-x-i-s, 6345. So, I find that there was reason to commit the stop. There was a legitimate nonviolation of the Fourth Amendment to ask if there are weapons. Upon admitting that there was a weapon I see no Fourth Amendment violation here, and therefore the motion is denied

{¶ 13} In March 2023, Bracey's counsel filed a motion to withdraw, and at a proceeding before the trial court on March 14, 2023, Bracey agreed with having counsel withdraw. Bracey indicated to the court that he felt he was racially profiled in the traffic stop but because his counsel did not talk with him prior to the suppression hearing, Bracey did not know that he could articulate his own questions for Detective Martin.

5.

{¶ 14} In April 2023, new counsel was appointed for Bracey and the trial court ordered Bracey to undergo a competency evaluation.  In May 2023, the original trial court judge recused himself and Bracey's case was assigned to a different trial court judge.  Also in May 2023, a competency hearing was held.

{¶ 15} In June 2023, Bracey was found to be competent.  Thereafter, Bracey's new defense counsel sought and received discovery and filed a motion for the transcript of the suppression hearing, which motion was granted.

{¶ 16} On August 2, 2023, Bracey's counsel filed a request for leave to file a supplemental motion to suppress or, in the alternative, to proffer or brief additional arguments for the trial court's and/or court of appeals' consideration.  The State did not file an opposition.

{¶ 17} On August 24, 2023, at a proceeding before the trial court, the court denied Bracey's request to supplement his motion to suppress without explanation.  The court did allow Bracey's counsel the opportunity to proffer, in writing, the arguments which would have been made if the request to supplement was granted.

{¶ 18} On August 28, 2023, Bracey filed an objection to the court's denial of his request to supplement his motion to suppress and provided proffered arguments to preserve the issue for appeal.  Bracey argued, inter alia, the "alleged traffic violation was merely a subterfuge . . . Officer Martin essentially testifies to a blanket policy/practice of pulling over almost every car that leaves the Weiler Homes, indiscriminate of a reasonably articulable suspicion of criminal activity. . . [and] this also calls into question his credibility of whether or not an actual traffic infraction occurred. . . . What it does not

6.

leave up for debate is that fact that this scenario is a classic example of profiling. Officers following and then stopping a person simply because of their location in a high crime, predominantly African-American, neighborhood without a reasonable articulable suspicion that a crime was occurring violates that person's constitutional rights under the Fourth Amendment."

{¶ 19} On August 31, 2023, Bracey entered a no contest plea to the indicted offense. The plea was accepted, he was found guilty and sentenced to community control. Bracey timely appealed.

{¶ 20} Because we find it determinative, we will examine Bracey's fifth assigned error first.

### Fifth Assignment of Error

{¶ 21} In this assigned error, Bracey argues the trial court abused its discretion in not permitting him to re-open the suppression issue to address and challenge the pretextual nature of the traffic stop based on racial profiling. He contends "law enforcement behavior in this case is apparently systematic and ongoing. The government has set out on a program to, through camouflage, deliberately stop every vehicle leaving the allegedly 'high crime' area of the 'Weiler Homes[.]'" Bracey submits "[t]he question here is whether the sort of stop procedure effected here is permissible under the 14th Amendment's Equal Protection, or under Ohio Equal Protection." Bracey quotes *Whren v. United States*, 517 U.S. 806, 813 (1996), for the proposition that "'the Constitution prohibits selective enforcement of the law based on considerations such as race.'" Bracey observes the Supreme Court of Ohio has never reviewed whether "Ohio Equal

7.

Protection" prohibits these sorts of stops, or if not, if the exclusionary rule is implicated. He cites to *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 4 (1996).

{¶ 22} The State counters that Bracey presented no new evidence for the trial court to consider when he sought leave to supplement his motion to suppress. In support, the State cites to *State v. Lashuay*, 2007-Ohio-6365 (6th Dist.), where this court ruled that the trial court abused its discretion in denying a request to re-open a suppression hearing when confronted with new evidence bearing directly on the propriety of a search or seizure. *Id.* at ¶ 20. The State contends Bracey sought to relitigate the trial court's decision regarding Fourth Amendment implications, although the court told Bracey, when Bracey considered hiring new counsel, that he would not be permitted a second opportunity to re-litigate the suppression hearing.

## Law

### Motion to Suppress

{¶ 23} As to pretrial motions, including motions to suppress, Crim.R. 12 states:

(C) . . . Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
. . .

(3) Motions to suppress evidence, including but not limited to statements and identification testimony, on the ground that it was illegally obtained. Such motions shall be filed in the trial court only.
. . .

(D) Motion Date. All pretrial motions . . . shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court **in the interest of justice** may extend the time for making pretrial motions.
. . .

8.

(H) Effect of Failure to Raise Defenses or Objections. Failure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court pursuant to division (D) of this rule, . . . shall constitute waiver of the defenses or objections, but the court for **good cause** shown may grant relief from the waiver. (Emphasis added.)

{¶ 24} Good cause is not defined in Crim.R. 12, thus "the ordinary and natural definition of the phrase applies. Black's Law Dictionary (5 Ed.1979) defines 'good cause' as '[s]ubstantial reason, one that affords legal excuse.'" *State v. Brown*, 38 Ohio St.3d 305, 308 (1988). Good cause was described in *Roberts v. State*, 1976 WL 190113, *2 (10th Dist. Aug. 5, 1976), as "a very flexible, equitable term." Thus, generally "what constitutes 'good cause' depends upon the circumstances." *Id.*

{¶ 25} A trial court has the discretion to allow a defendant to supplement a previously filed motion to suppress. *State v. Wells*, 11 Ohio App.3d 217, 219 (6th Dist. 1983). This court explained that "if the issues raised by that motion, and those [supplemental issues] sought to be raised . . . stem from the same (or common) facts and are so interrelated that disposition of those issues together would be reasonable and the prosecution would not be prejudiced thereby[,]" supplementation is permissible. *Id.* at 219-220. This court did not rule that new evidence was required in order to supplement a previously filed motion to suppress. *See also State v. Kelley*, 2014-Ohio-3673, ¶ 4, 24-28 (5th Dist.), where the court, citing *Wells*, ruled that the trial court (which granted the defendant's motion for leave to supplement his motion to suppress upon finding that he demonstrated good cause) did not act in an unreasonable, arbitrary or unconscionable manner.

9.

**{¶ 26}** In *Lashuay*, 2007-Ohio-6365 (6th Dist.), this court recognized defendant had received new evidence which he sought to present to the trial court by reopening the suppression hearing, but the trial court would not allow reopening the hearing. *Id.* at ¶ 8-9. This court held the trial court's failure to consider the new evidence denied defendant a full and fair opportunity to argue his case on the validity of the seizure. *Id.* at ¶ 20.

**Search and Seizure/Traffic Stop**

**{¶ 27}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, guarantee a person's right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391 (2001). The temporary detention of a motorist during a traffic stop is a seizure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). A police officer may initiate a traffic stop if the officer has reasonable suspicion to believe that the motorist is engaged in criminal activity. *State v. Tidwell*, 2021-Ohio-2072, ¶ 19.

**Standard of Review**

**{¶ 28}** Since a trial court has the discretion to allow a defendant to supplement a previously filed motion to suppress, an appellate court will not reverse a trial court's decision denying a request to supplement, absent an abuse of discretion. *Wells* at 220. An abuse of discretion means the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996).

**Analysis**

**{¶ 29}** Upon review, the record shows that Bracey sought to supplement his motion to suppress with arguments that the traffic stop itself was not valid because it was

10.

based on racial profiling and pretext. This issue was not raised or argued in the original motion to suppress by Bracey's first counsel, as the original motion to suppress focused on the *scope* of the search after the traffic stop had occurred, not on the *validity* of the stop.

{¶ 30} The State did not file an opposition to Bracey's request to supplement the motion to suppress. The trial court denied the request without providing a reason on the record.

{¶ 31} We find, based on the totality of the circumstances in the record and the applicable law, that good cause supported Bracey's request to supplement his motion to suppress. Bracey testified at the suppression hearing that he was profiled, and he informed the original trial court judge, on March 14, 2023, less than two months after the suppression hearing, that the traffic stop was due to racial profiling. Then, on August 2, 2023, Bracey's new counsel followed the appropriate legal procedure by requesting leave to supplement the motion to suppress to dispute the validity of the traffic stop.

{¶ 32} We find that the trial court should have allowed Bracey to supplement his motion to suppress to provide him the opportunity to produce evidence to support his contention that he was subjected to an unlawful traffic stop. The court's failure to permit Bracey to supplement his motion to suppress denied him the ability to present evidence which was necessary to a fair and just determination by the court as to whether reasonable and articulable suspicion existed to justify the traffic stop.

11.

**{¶ 33}** We therefore conclude it was unreasonable and an abuse of discretion for the trial court to deny Bracey's motion for leave to supplement his motion to suppress. Accordingly, we find Bracey's fifth assignment of error well-taken.

**{¶ 34}** Our resolution of Bracey's fifth assignment of error renders moot his remaining assignments of error.

**{¶ 35}** The judgment of the Lucas County Court of Common Pleas is reversed and this case is remanded for proceedings consistent with this decision. The State is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| CONCUR. | JUDGE |
| | |
| Gene A. Zmuda, J. | |
| CONCURS, IN PART, DISSENTS IN PART, AND WRITES SEPARATELY. | JUDGE |

12.

**ZMUDA, J., concurring, in part, dissenting, in part.**

{¶ 36} Because I would affirm the trial court's decision, denying the motion to reopen the suppression hearing, but would otherwise vacate the sentence and remand for a new sentencing hearing, I respectfully dissent, in part.

## I.  Background

{¶ 37} This is an appeal by appellant, Dominic Bracey, from the judgment of the Lucas County Common Pleas court on August 31, 2023, sentencing him to a two-year period of community control following his no contest plea to the indicted charge, improper handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) and (I). Bracey challenged his conviction, asserting the following assignments of error:

I.  Trial counsel was ineffective for failing to make an as applied and facial challenge to the constitutionality of R.C. Sect. 2923.16(B) pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen* or alternatively the court committed plain error in convicting on the unconstitutional charge or alternatively plain error applies.

II.  The only reason that Mr. Bracey did not possess a concealed carry permit, which would have made his firearm possession unquestionably legal, was that he could not afford the application fee; in this circumstance counsel was ineffective for not making an as applied and facial challenge to the statute as violating equal protection under the Ohio and United States Constitution, or alternatively plain error applies.

III.  The trial court erred in making a finding of guilt following Mr. Bracey's no contest plea as the indictment is insufficient to charge an offense.

IV.  The trial court's denial of Mr. Bracey's motion to suppress evidence is not supported by *competent* and credible evidence and is contrary to the evidence presented.

V.  The trial court erred in not permitting Mr. Bracey to re-open the suppression issue in order to address and challenge the flagrant pretextual

13.

nature of the stop here, and its constitutionality under the U.S. Fourth Amendment and the Ohio Constitution's provisions for equal protection.

{¶ 38} Bracey was charged by indictment on August 23, 2022 with improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) and (I). The offense occurred on April 28, 2022, prior to the effective date of R.C. 2923.111 (June 13, 2022), which permits carrying a concealed handgun without a license, including in a vehicle.

{¶ 39} On November 22, 2022, Bracey moved to suppress the evidence, arguing the traffic stop was an unlawful stop. There was no dashcam video of the traffic stop.

{¶ 40} At the suppression hearing on January 28, 2023, Detective Anthony Martin testified that he and Border Patrol Agent Edgell were "doing crime suppression" near the Weiler Homes on April 28, 2022, conducting a "multiagency crime sweep" and conducting traffic stops. Martin described the activity, stating, "We're crime suppression unit. We go to high crime areas and prioritize and getting drugs and guns." He explained "crime suppression" as "Making multiple traffic stops in high crime areas that lead to possibly drugs or guns." Martin testified that he observed Bracey's vehicle turn without signaling, and initiated the traffic stop for this infraction. Martin also acknowledged he and Edgell did a U-turn after passing Bracey's vehicle exiting the Weiler Homes and followed Bracey before witnessing the traffic infraction. Martin admitted he "quite frequently" stopped vehicles leaving the Weiler Homes, but clarified his activity in the following exchange:

> Q. Does that mean every time you see a car leave the Weiler Homes you stop them?
> A. If we see a traffic infraction, we would conduct a traffic stop from it.

14.

{¶ 41} After Edgell and Martin approached Bracey's vehicle, Martin asked Bracey if he had "any guns or drugs inside the vehicle." Bracey informed Martin he had a firearm inside the car. Bracey also admitted that he did not have a valid CCW permit. Martin informed Bracey of his *Miranda* rights and placed him under arrest for illegal transport of a firearm.[2]

{¶ 42} At the close of testimony, Bracey's trial counsel did not dispute evidence of a traffic infraction, acknowledging Martin's testimony that he observed Bracey turn without signaling. Instead, counsel argued that the traffic stop occurred during daylight, and Bracey's conduct was cooperative and non-threatening. Therefore, counsel argued, the officer had no reason to inquire about weapons immediately upon approaching Bracey's vehicle. Counsel argued that the question, "any weapons in the car?" constituted a search that extended beyond what was proper for a traffic stop, and evidence of the weapon should be suppressed.

{¶ 43} The state argued a valid stop based on a traffic infraction, and a valid question regarding weapons for officer safety. The state further noted that Bracey volunteered the information in response to the officer's question, and Bracey also admitted to having no permit to have a concealed weapon. Therefore, the state argued that suppression should be denied.

---

[2] The record demonstrates that Bracey was arrested for violation of R.C. 2923.16(B).

**{¶ 44}** At the conclusion of the suppression hearing, the trial court ruled from the bench, stating:

> I am denying the motion to suppress. I believe the testimony from Detective Martin. Also, I believe there's case law indicating that police officers have legitimate reason to be concerned about the possibility of weapons during a routine stop. I'm going to quote State versus Cavins, C-a-v-i-n-s, Second District, 1999 Ohio Appl Lexis, L-e-x-i-s, 6345. So, I find that there was reason to commit the stop. There was a legitimate nonviolation of the Fourth Amendment to ask if there are weapons. Upon admitting that there was a weapon I see no Fourth Amendment violation here, and therefore the motion is denied.

The trial court entered a written denial of the motion to suppress on January 31, 2023.

**{¶ 45}** On March 10, 2023, Bracey's trial counsel filed a motion to withdraw as counsel. On March 14, 2023, Bracey appeared for his scheduled trial date, converted to a pretrial, and the trial court addressed the motion to withdraw. The trial court granted counsel's motion to withdraw, and Bracey informed the trial court that he would retain counsel. At Bracey's request, the trial court continued the matter until April 12, 2023, to permit Bracey to retain counsel.

**{¶ 46}** On April 12, 2023, Bracey appeared for pretrial and informed the trial court that he wished to represent himself. The colloquy that followed between Bracey and the trial court was frustrated by Bracey's reluctance in executing the written waiver and the trial court's inquiry as to whether Bracey is a sovereign citizen. Bracey took offense to this characterization and the hearing ended with Bracey refusing to sign a waiver and asserting he would press charges against the trial court, and the trial court ordering a psychiatric evaluation and a competency evaluation for Bracey. The trial court appointed

16.

its public defender as new counsel for Bracey and continued the matter for a competency hearing on May 12, 2023.

{¶ 47} On May 12, 2023, no hearing was held. The trial court, instead, noted:

> So I am aware that you have filed a suit against me. So, what I'm going to do is recuse myself from this case. What will happen is it will go to the administrative judge and you will be assigned a new judge. All right. As far as [the public defender's] representation, I think – I don't think you follow him because you're the public defender for this docket.

{¶ 48} On June 1, 2023, Bracey appeared before the newly assigned trial court. The new trial court attempted to appoint trial counsel, but Bracey refused the court's appointment after meeting with the proposed counsel, expressing a desire to represent himself rather than accept counsel's assistance.[3] The trial court noted that Bracey and the proposed counsel "got off on the wrong foot," and after determining Bracey qualified for appointed counsel, continued the matter for a new attorney. The trial court also summarily addressed the pending competency issue. The trial court admitted the evaluation reports as exhibits, and informed Bracey:

> Mr. Bracey, I'll inform you of what I'm sure you already knew the findings would be is that you're competent to stand trial and there was nothing in the general psych evaluation that would cause any concern for the Court in going forward.

The trial court scheduled the matter for appearance of new counsel.

---

[3] Based on the record, Bracey took issue with appointed counsel's representation that the trial court "put him on" Bracey to "handle" Bracey's case. Bracey informed the trial court that the initial interaction with appointed counsel was fine, but counsel then "started to say certain words, certain things…showing signs of control" and not listening to what Bracey had to say.

17.

{¶ 49} On June 8, 2023, Bracey appeared for pretrial with new counsel. The trial court scheduled a trial date for July 24, 2023. New trial counsel for Bracey informed the trial court that he would request discovery, "to get a clean batch of it." On June 13, 2023, Bracey's new counsel filed a motion for transcripts in forma pauperis of the suppression hearing of January 27, 2023. The trial court granted the motion.

{¶ 50} The trial court continued the July 24, 2023 trial date at the request of Bracey, and on August 2, 2023, Bracey filed a motion seeking leave to file a supplemental motion to suppress, or in the alternative, leave to proffer/brief additional argument regarding the issues raised on the original motion to suppress concerning the validity of the traffic stop. In his motion, Bracey argued that prior counsel failed to pursue argument or elicit testimony regarding a pretextual stop, stating:

> Specifically, that officers were profiling [Bracey] and on a "fishing expedition" by employing a blanket policy of pulling over vehicles leaving the high-crime Weiler Homes under the guise of "crime suppression," as opposed to actual traffic enforcement See generally, *State v. Brown,* 183 Ohio App.3d 50, 2009-Ohio-3803, as briefly cited to in the Motion to Suppress.

Bracey argued that the current record, without this additional argument, was "not sufficient to preserve said argument for future consideration by the Sixth District Court of Appeals." There was no argument regarding the nature of any new evidence.

{¶ 51} The state filed no written opposition to the motion. On August 24, 2023, Bracey appeared for pretrial with counsel, and the trial court addressed the motion seeking leave to supplement the motion to suppress with new hearing or, in the alternative, with a proffer of additional argument. The trial court stated:

18.

There was a matter pending before the court. [Bracey's counsel], you had filed a request for leave to either supplement the motion to suppress that had previously been filed, went to a hearing and was denied, or supplement the record with a proffered statement or argument as to what you believe was missed by prior counsel.

…

I had indicated to counsel for the State as well as [Bracey's counsel] that the court was going to deny the request for leave to file a second motion to suppress, or otherwise supplement; however, I will give you an opportunity to proffer for the record what argument you would have made if that had been granted. …

{¶ 52} Considering this recitation on the record, it is clear the trial court had discussed the matter with counsel, prior to denying leave to reopen the suppression hearing. While that discussion is not preserved in the record, the majority's assertion of a denial without a reason fails to account for the referenced discussion. Furthermore, the trial court granted some portion of the motion, permitting Bracey's trial counsel to file the proffer, which was filed on August 28, 2023.

{¶ 53} In the proffer, Bracey argued that his Fourth Amendment rights were violated by a pretextual stop based on the "high crime area" near the Weiler Homes, amounting to nothing more than a "fishing expedition." Bracey argued that "Detective Martin 'quite frequently' pulls over vehicles that exit the Weiler homes, seemingly just because they are exiting the Weiler homes." Bracey further noted that Martin's attention was drawn to Bracey's vehicle only because he was "leaving the Weiler Homes." Therefore, Bracey argued, the traffic infraction was part of a "blanket policy" of stopping people based on presence at the Weiler Homes and "merely a subterfuge to their inevitable stop and search to 'suppress crime.'"

19.

**{¶ 54}** Arguing only a Fourth Amendment violation, Bracey's proffer set forth argument that Martin's conduct constituted unlawful profiling rather than a lawful traffic stop. Significantly, the proffer contained no claims regarding an Equal Protection violation, with argument limited to targeting people in a "high crime area" and no allegations of any specific, discriminatory conduct.[4] The proffer appeared to challenge the veracity of Martin's testimony regarding a traffic infraction, considering Bracey's insistence that he signaled his turn.

**{¶ 55}** On August 31, 2023, Bracey entered a no contest plea to the offense charged, preserving his challenge to the lawfulness of the stop for appeal. The trial court noted receipt of Bracey's proffer and addressed Bracey, stating:

> More importantly, I want to make sure for the record that you understand the nature of this type of plea, a no contest plea, will permit you to file an appeal and challenge the Court's previous ruling on the motion to suppress.

Bracey acknowledged that he understood both the nature of the plea and his ability to challenge the ruling on suppression on appeal. After a complete plea colloquy, the trial court accepted the plea, found Bracey guilty, and immediately proceeded to sentencing

---

[4] As noted by the United States Supreme Court in *Whren v. United States,* 517 U.S. 806, 812-13 (1996), a motion to suppress under the Fourth Amendment is not the vehicle for challenging discrimination under the Equal Protection Clause. Instead, courts recognize a separate legal claim by the person stopped, alleging a violation of the Equal Protection clause. In such cases, the claim must be supported by objective facts demonstrating a discriminatory purpose and discriminatory effect, with identification of similarly situated individuals of a different race or ethnicity treated differently from the targeted group. *Daniels v. City of Wyoming,* 2017 WL 7661477 (6th Cir. 2017).

20.

him. The trial court placed Bracey on a two-year period of community control and this appeal followed.

## II. Analysis

{¶ 56} The majority addressed Bracey's final assignment of error as dispositive and found the trial court committed error in denying reopening of the suppression hearing to address new argument of racial profiling. In finding the trial court abused its discretion, however, the majority gave undue weight to Bracey's generalized Equal Protection argument, never articulated in the trial court, which is premised on a belief that the "government has set out on a program to, through camouflage, deliberately stop **every vehicle**… ."[5] This argument, however, misconstrues the facts in the record and mischaracterizes the record upon which the trial court based its decision.

{¶ 57} The majority further found that a lack of new evidence is not dispositive, but based on a determination that the trial court abused its discretion, ordered the plea and sentence vacated and remanded the matter for further hearing on Bracey's motion to suppress to address new argument. From the majority's analysis, however, it appears the majority remanded for new hearing on the argument Bracey raised only in his appeal, and

---

[5] The majority addresses this new argument without acknowledging Bracey's failure to raise the argument in the trial court, and without considering the standard applied to an Equal Protection claim, separate from a challenge asserting Fourth Amendment protections. Furthermore, "[a]rguments raised for the first time on appeal will not be considered by an appellate court.*" State v. Henning,* 2023-Ohio-2905, ¶ 27 (6th Dist.); *see also Wakeman v. Smith,* 2024-Ohio-1067, ¶ 12 (6th Dist.); *Hoytville v. Kaufman,* 2025-Ohio-1097, ¶ 41 (6th Dist.), quoting *InvesTek Management Services, Inc. v. Tate,* 2024-Ohio-5850, ¶ 21 (6th Dist.) ("[A]rguments a party raises for the first time on appeal are generally barred.").

21.

not to address the new argument contained within Bracey's proffer in the trial court. Based on my review of the facts and controlling law, I find remand to address new argument raised only on appeal is improper in this case, and remand would lead to a futile rehearing on the issue of suppression, considering the lack of new evidence and Bracey's proposed new argument. Furthermore, considering Bracey's Equal Protection claim, my conclusion remains the same, as Bracey's Equal Protection challenge merely restates the "pretext" argument without any unique argument addressing the facts relative to his Equal Protection challenge. Therefore, I find that the majority would remand the matter for the trial court to apply well-settled Fourth Amendment precedent that defeats Bracey's new argument. For these reasons, I respectfully dissent.

**A. An additional hearing on the motion to suppress is not merited.**

{¶ 58} The standard of review regarding the trial court's denial of reopening is abuse of discretion. *State v. Lashuay,* 2007-Ohio-6365, ¶ 19 (6th Dist.). In *Lashuay,* we held that a trial court abused its discretion in refusing to reopen the suppression hearing to review and consider new evidence that bore "directly on the propriety of the stop." *Lashuay* at ¶ 20. We held, in part, that the trial court "erred in choosing to resolve factual conflicts raised by the new evidence" and "abused its discretion in refusing to reopen the suppression hearing to consider the new evidence's effect." *Id.* Without new evidence, the majority in this case reverses and remands for a new suppression hearing to consider argument of a pretextual stop, rephrased as a generalized Equal Protection challenge

22.

without articulation of supporting facts, and this argument was never presented to the trial court but was raised for the first time on appeal.[6]

{¶ 59} In this case, Bracey does not argue that there was new evidence, but instead, he attempts to characterize the existing evidence as suggesting Martin's traffic stop of Bracey was tantamount to racial profiling because Martin effectuated traffic stops of all vehicles, and not just vehicles involved in traffic infractions. The testimony at hearing, however, clearly demonstrated that Martin only pulled over vehicles after observing a traffic violation. When asked if he initiated a traffic stop of all vehicles, Martin testified, "If we see a traffic infraction, we would conduct a traffic stop from it." In ruling on the motion to suppress, the trial court stated, "I believe the testimony from Detective Martin." Therefore, this is not a case in which the trial court's consideration of evidence was incomplete based on a failure to consider new evidence. This is also not a case in which the record was insufficient for the trial court to resolve any conflicts in the testimony. With no new evidence or other basis to challenge the factual record already adduced, the trial court was within its discretion to deny reopening of the suppression hearing. *See, e.g., State v. Brown,* 2008-Ohio-2670, ¶ 29 (9th Dist.) (distinguishing

---

[6] In *United States v. Avery,* the Sixth Circuit Court of Appeals considered an Equal Protection challenge to a traffic stop, stating "In order 'to prevail under the Equal Protection Clause, [a defendant] must prove the decision makers in *his* case acted with discriminatory purpose.'" 137 F.3d 343, 355 (6th Cir.), quoting *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987)(additional citation omitted.). Bracey's Equal Protection argument merely restates "pretext" argument and does not address discrimination that would implicate the Equal Protection Clause.

23.

*Lashuay* and finding no abuse of discretion in denying reopening where there was no new evidence for the trial court to consider).

{¶ 60} Lacking claims of new evidence, Bracey's motion for reopening was limited to presenting new arguments regarding a pretextual stop and profiling. Significantly, Bracey did not raise any challenge based on an Equal Protection violation before the trial court. While the trial court denied Bracey's request to reopen and assert new argument for the trial court's reconsideration, the trial court ***did*** permit supplemental briefing to address the new arguments for purposes of appeal. The new arguments challenged the validity of the stop as the result of profiling and pretext, based on the officers' surveillance activities near the Weiler Homes as part of a crime suppression unit participating in a multiagency crime sweep. Significantly, this argument relied on the invalidity of a pretextual stop with no effort to distinguish the new argument to avoid the preclusive effect of well-settled precedent on the issue

{¶ 61} We have consistently followed the Ohio Supreme Court's holding in *Dayton v. Erickson,* 76 Ohio St.3d 3 (1996), which I believe controls in this case. While the majority does not include analysis of *Erickson* in its reasoning, aside from noting the state's reliance on this precedent, the law nevertheless is controlling. As stated in *Erickson,* "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious

24.

criminal activity. (United States v. Ferguson [C.A.6, 1993], 8 F.3d 385, applied and followed.)." *Erickson* at the syllabus.

{¶ 62} "'Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'" *State v. Bello-Mancilla,* 2017-Ohio-8003, ¶ 17 (10th Dist.), citing *United States v. Ross,* 300 Fed Appx. 386, 390 (6th Cir. 2008), quoting *Whren v. United States,* 517 U.S. 806, 813 (1996). "Courts have also generally rejected racial profiling as a basis for evidence suppression when the evidence supports the reasonableness of the investigatory stop." *State v. Walker,* 2024-Ohio-4469, ¶ 16 (4th Dist.), quoting *State v. Hansard,* 2020-Ohio-5528, ¶ 28 (4th Dist.), citing *State v. Coleman*, 2014–Ohio–1483, ¶ 18 (3d Dist.); *State v. Chambers*, 2011-Ohio-1305, ¶ 22 (3d Dist.); *United States v. Cousin,* 448 Fed. Appx. 593, 594 (6th Cir.2012); *Cleveland v. Oko*, 2016–Ohio–7774, ¶ 20 (8th Dist.) (additional citations omitted.).

{¶ 63} Bracey's new argument, proffered in the trial court, challenged the validity of the traffic stop based on pretext or profiling, without addressing *Erickson* and with no attempt to distinguish that precedent based on the present case. On appeal, Bracey adds mention of the Equal Protection clause, with a conclusive assertion that the practice of conducting traffic stops in a particular area "goes far beyond the pretextual stops" discussed in *Erickson.* Based solely on Bracey's proffer, however, the validity of Bracey's traffic stop is clear, applying the controlling authority of *Erickson.* Pursuant to *Erickson,* a traffic stop based on observation of a traffic violation is a valid traffic stop for Fourth Amendment purposes, even if the officers are targeting vehicles, as in the present case in which Martin targeted vehicles leaving the Weiler Homes. "In other words, pretextual

25.

stops are not unlawful, per se." *State v. McMillin,* 2005-Ohio-2096, ¶ 18 (6th Dist.); *see also State v. Brown,* 2009-Ohio-3804, ¶ 10 (6th Dist.); *State v. Bui,* 2021-Ohio-362, ¶ 17 (6th Dist.).

{¶ 64} Accepting the trial court's factual determination regarding Martin's observance of a traffic violation as true, as we must, considering the evidentiary record in this case, I find the rule in *Erickson* applies to this case and Bracey's new argument therefore fails. Specifically, considering the lack of new evidence for the trial court to review, and no argument that would require the trial court to reconsider the validity of the traffic stop, I find *Lashuay* provides no basis to reverse and remand for a new suppression hearing. Quite simply, Bracey's new argument is barred by well-settled precedent, following *Erickson.*

{¶ 65} In addition to his argument regarding pretext, for the first time on appeal, Bracey argues an Equal Protection violation based on the location of the officers' enforcement activities. Bracey alludes to no operative facts that demonstrate a discriminatory purpose and effect, as well as disparate treatment based on race, ethnicity, or other basis when compared to a similarly situated and different group of persons. Instead, Bracey's argument merely reiterates the "subjective intentions" that have been deemed irrelevant to analysis under the Fourth Amendment. *See Bello-Mancilla* at ¶ 17. We have previously declined to address a similar argument, raising an Equal Protection theory on appeal after failing to assert the theory in the trial court. *State v. Peterson,* 2023-Ohio-3544, ¶ 31 (6th Dist.). Considering the argument is merely an alternatively framed challenge to a pretextual stop that lacks legal support under controlling law, I

26.

would decline to address the argument in this case as well. Therefore, I find Bracey's fifth assignment of error not well-taken.

{¶ 66} Based on this determination, I disagree with the majority's determination that Bracey's fifth assignment of error is dispositive. Accordingly, Bracey's remaining assignments of error must be considered.

**B. There was competent, credible evidence to support denial of Bracey's motion to suppress.**

{¶ 67} Bracey's remaining challenge to the trial court's determination of his motion to suppress concerns the credibility of the evidence. In his fourth assignment of error, Bracey argues that the trial court's determination was "not supported by *competent* and credible evidence" because of Bracey's testimony that he signaled his turn, contrary to Martin's testimony. Bracey's challenge to Martin's credibility, however, is not accompanied by any claim that there is additional evidence not yet presented, to challenge Martin's testimony. The trial court found Martin believable and resolved the conflicting testimony accordingly. Applying the proper standard of review, we must accept the trial court's factual findings if there is competent, credible evidence in support. *State v. Burnside,* 2003-Ohio-5372, ¶ 8; *see also State v. Hageman,* 2009-Ohio-169, ¶ 10 ("a trial court is in the best position to resolve factual questions and evaluate the credibility of witnesses") (citation omitted.). The existing record demonstrates competent, credible evidence.

{¶ 68} In this case, Martin testified that Bracey's vehicle turned without signaling. Bracey, in contrast, testified that he used his turn-signal. The trial court expressly found

27.

Martin to be most credible, stating "I believe the testimony from Detective Martin." Furthermore, Bracey points to nothing in the record that required the trial court to resolve this disputed fact in his favor. There is no basis to reject the trial court's determination as to the underlying traffic violation. Accordingly, I find the trial court's determination was based on competent, credible evidence, and I find no error in the trial court's denial of Bracey's motion to suppress, based on the record before the court. Therefore, I find Bracey's fourth assignment of error not well-taken.

**C. Bracey challenges the prior version of the law; based on the amendments to the statutes, the record demonstrates plain error related to sentence.**

{¶ 69} Bracey's first and second assignments of error raise ineffective assistance of counsel based on trial counsel's failure to challenge the constitutionality of R.C. 2923.16(B), based on Bracey's lawful gun ownership and his completion of all but the financial requirements for a concealed carry permit, and based on equal protection concerns with R.C. 2923.125, the law governing concealed handgun licenses, which at the time of the incident required payment of an application fee. Bracey notes the change to the statutes and raises the issue of plain error relative to his conviction under R.C. 2923.16(B). In his third assignment of error Bracey argues the indictment was insufficient to charge him with a criminal offense because the indictment failed to allege that Bracey did not have a CCW permit at the time of the incident. Each of these assigned errors challenge the state's ability to charge or the way the state charged Bracey with the offense of improper handling a handgun in a motor vehicle.

28.

**{¶ 70}** While Bracey challenges the application of R.C. 2923.16 in his case, Bracey bases his challenge on a prior version of the law. In other words, the statute Bracey challenges is not the same statute presently in effect. The amendments through enactment of R.C. 2923.111, effective June 13, 2022, changed the statute by eliminating the need for a CCW permit. Bracey limits his argument, however, to the language contained within R.C. 2923.16(B), arguing the only reason Bracey lacked a CCW permit was based on his inability to pay the fees to obtain the permit. In recognizing the amendment to the statutes, Bracey appears to seek to vacate his conviction based on the subsequent legality of the conduct. Bracey overlooks the effect of the amendment, however, as to the available penalty or sanction.

**{¶ 71}** The timeline of the case demonstrates prohibited conduct prior to amendment, with indictment, plea, and sentence occurring after the amendment.

**{¶ 72}** On April 28, 2022, Bracey was stopped for turning without signaling. Bracey informed the officers he had a loaded handgun in the pocket behind the front passenger seat and he admitted he did not possess a permit to carry a concealed weapon. Bracey did not otherwise make furtive motions or refuse any request or direction of the officers. Bracey was charged with violation of R.C. 2923.16(B), improper handling of a handgun in a motor vehicle, which is a felony of the fourth degree pursuant to R.C. 2923.16(I).

**{¶ 73}** However, under R.C. 2923.16(E), a person who has been issued a concealed handgun license may transport a loaded handgun, but may not "do any of the following:"

29.

(1) Before or at the time a law enforcement officer asks if the person is carrying a concealed handgun, knowingly fail to disclose that the person then possesses or has a loaded handgun in the motor vehicle, provided that it is not a violation of this division if the person fails to disclose that fact to an officer during the stop and the person already has notified another officer of that fact during the same stop;

(2) Before or at the time an employee of the motor carrier enforcement unit asks if the person is carrying a concealed handgun, knowingly fail to disclose that the person then possesses or has a loaded handgun in the commercial motor vehicle, provided that it is not a violation of this division if the person fails to disclose that fact to an employee of the unit during the stop and the person already has notified another employee of the unit of that fact during the same stop;

(3) Knowingly fail to remain in the motor vehicle while stopped or knowingly fail to keep the person's hands in plain sight at any time after any law enforcement officer begins approaching the person while stopped and before the law enforcement officer leaves, unless the failure is pursuant to and in accordance with directions given by a law enforcement officer;

(4) Knowingly have contact with the loaded handgun by touching it with the person's hands or fingers in the motor vehicle at any time after the law enforcement officer begins approaching and before the law enforcement officer leaves, unless the person has contact with the loaded handgun pursuant to and in accordance with directions given by the law enforcement officer;

(5) Knowingly disregard or fail to comply with any lawful order of any law enforcement officer given while the motor vehicle is stopped, including, but not limited to, a specific order to the person to keep the person's hands in plain sight.

R.C. 2923.16(E)(1)-(5).

**{¶ 74}** R.C. 2923.16(F)(5) further provides:

(5) Divisions (B) and (C) of this section do not apply to a person who transports or possesses a handgun in a motor vehicle if, at the time of that transportation or possession, both of the following apply:

(a) The person transporting or possessing the handgun has been issued a concealed handgun license that is valid at the time in question or the person is an active duty member of the armed forces of the United States and is carrying a valid military identification card and documentation of successful completion of firearms training that meets

or exceeds the training requirements described in division (G)(1) of section 2923.125 of the Revised Code.

(b) The person transporting or possessing the handgun is not knowingly in a place described in division (B) of section 2923.126 of the Revised Code.

{¶ 75} On June 13, 2022, the General Assembly amended the statutes governing concealed carrying of firearms, enacting R.C. 2923.111 which removed the requirement for a CCW permit and instead made carrying a concealed weapon legal for "qualified adults." R.C. 2923.111 applies to other Revised Code provisions concerning concealed carry, as follows:

(B) Notwithstanding any other Revised Code section to the contrary:

(1) A person who is a qualifying adult shall not be required to obtain a concealed handgun license in order to carry in this state, under authority of division (B)(2) of this section, a concealed handgun that is not a restricted firearm.

(2) Regardless of whether the person has been issued a concealed handgun license, subject to the limitations specified in divisions (B)(3) and (C)(2) of this section, a person who is a qualifying adult may carry a concealed handgun that is not a restricted firearm anywhere in this state in which a person who has been issued a concealed handgun license may carry a concealed handgun.

(3) The right of a person who is a qualifying adult to carry a concealed handgun that is not a restricted firearm that is granted under divisions (B)(1) and (2) of this section is the same right as is granted to a person who has been issued a concealed handgun license, and a qualifying adult who is granted the right is subject to the same restrictions as apply to a person who has been issued a concealed handgun license.

(C)(1) For purposes of any provision of section 1547.69, 2923.12, or 2923.124 to 2923.1213 of the Revised Code, or of any other section of the Revised Code, that refers to a concealed handgun license or a concealed handgun licensee, except when the context clearly indicates otherwise, all of the following apply:

(a) A person who is a qualifying adult and is carrying or has, concealed on the person's person or ready at hand, a handgun that is not a restricted firearm shall be deemed to have been issued a valid concealed handgun license.

31.

(b) If the provision refers to a person having been issued a concealed handgun license or having been issued a concealed handgun license that is valid at a particular point in time, the provision shall be construed as automatically including a person who is a qualifying adult and who is carrying or has, concealed on the person's person or ready at hand, a handgun that is not a restricted firearm, as if the person had been issued a concealed handgun license or had been issued a concealed handgun license that is valid at the particular point in time.

(c) If the provision in specified circumstances requires a concealed handgun licensee to engage in specified conduct, or prohibits a concealed handgun licensee from engaging in specified conduct, the provision shall be construed as applying in the same circumstances to a person who is a qualifying adult in the same manner as if the person was a concealed handgun licensee.

(d) If the application of the provision to a person depends on whether the person is or is not a concealed handgun licensee, the provision shall be applied to a person who is a qualifying adult in the same manner as if the person was a concealed handgun licensee.

(e) If the provision pertains to the imposition of a penalty or sanction for specified conduct and the penalty or sanction applicable to a person who engages in the conduct depends on whether the person is or is not a concealed handgun licensee, the provision shall be applied to a person who is a qualifying adult in the same manner as if the person was a concealed handgun licensee.

Of note, R.C. 2923.111(C)(1)(e) requires the **penalty or sanction** for conduct to be applied "***in the same manner as if the person was a concealed handgun licensee***" if that person is a qualifying adult and the prohibited conduct "depends on whether the person is or is not a concealed handgun licensee[.]"

{¶ 76} On August 23, 2022, Bracey was indicted on one count of improperly handling a firearm in a motor vehicle, after the traffic violation was dismissed in the Toledo Municipal Court on July 12, 2022, upon recommendation of the prosecutor. The matter proceeded through discovery, a suppression hearing challenging the basis for the traffic stop, and supplementation of argument relative to the suppression issue. Bracey

32.

entered a no contest plea to the indictment, preserving his challenge to the validity of the traffic stop for review on appeal. Bracey did not assert a constitutional challenge in the trial court but raises the issue as ineffective assistance of counsel or, in the alternative, plain error.

{¶ 77} We have previously recognized the possibility that an amendment to the statutes affected the available sentence, post-amendment. In *State v. Barber,* 2023-Ohio-2991, ¶ 5 (6th Dist.), we noted the defense argument that "Ohio law no longer punishes carrying a concealed weapon without a permit" and therefore, "there was no longer a sentence available to impose upon appellant." In *Barber,* however, the facts demonstrated that the defendant was *not* a qualified adult under R.C. 2923.111. *Id.* at ¶ 6.

{¶ 78} Pursuant to R.C. 1.58(B), "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, ***if not already imposed,*** shall be imposed according to the statute as amended." (Emphasis added.). "[T]he determining factor on whether the [amendment applies] to an offender is not the date of the commission of the offense but rather whether sentence has been imposed." *State v. Taylor,* 2014-Ohio-460, ¶ 19.

{¶ 79} R.C. 2923.111 amended the penalty provision of R.C. 2923.16, by reference, and therefore, the constitutionality of R.C. 2923.16(B) is not the issue. Rather, the issue is whether the trial court's sentence, entered after amendment, is contrary to law.

{¶ 80} Bracey broadly argues plain error, based on a violation of his due process rights. In doing so, Bracey notes the change to the statute and argues that, but for the required fee, he would have had the proper license to be exempted from being found in

violation of R.C. 2923.16(B). While Bracey does not seek review of the validity of his sentence, in light of amendments to R.C. 2923.16(B), we may consider the sentence under plain error review pursuant to Crim.R .52.

{¶ 81} While an appellant court does not generally raise plain error, sua sponte, the "general rule cannot be applied mechanically, especially to criminal appeals." *State v. Slagle,* 65 Ohio St.3d 597, 604 (1992). "Crim.R. 52(B) softens the general rule forbidding our consideration of unobjected errors." *Id.* This rule allows the appellate court, at the request of appellate counsel or *sua sponte*, to consider a trial error that was not objected to when that error was a 'plain error.'" *Id.*

{¶ 82} As provided by Crim.R. 52(B), plain errors are errors "affecting substantial rights" and may be addressed on appeal "although they were not brought to the attention of the court." In this case, the error occurred at sentencing, with the trial court imposing a penalty or sanction according to the prior statute rather than the statute as it was amended before sentencing occurred. As a result of this error, Bracey received a felony sentence for conduct under the old statute, despite the requirement under R.C. 2923.111 that Bracey be sentenced "***in the same manner as if the person was a concealed handgun licensee***" if Bracey were a "qualified adult." R.C. 2923.111(C)(1)(e). Additionally, as the sentence was imposed after amendment and reduced the penalty or sanction for the conduct, R.C. 1.58(B) required the trial court to impose sentence "according to the statute as amended."

{¶ 83} Under R.C. 2953.08(G)(2)(b), we may "vacate the sentence and remand the matter to the sentencing court for resentencing" where the "sentence is otherwise contrary

34.

to law." Considering this record, the trial court imposed a sentence that did not comply with the statutes. "'Otherwise, contrary to law' means 'in violation of statute or legal regulations at a given time.'" *State v. Harris,* 2025-Ohio-692, ¶ 36 (5th Dist.), quoting *State v. Jones*, 2020-Ohio-6729, ¶ 34 quoting Black's Law Dictionary (6th Ed. 1990).

{¶ 84} Accordingly, Bracey's sentence is contrary to law.

{¶ 85} Because Bracey's sentence is contrary to law, I would vacate the sentence and remand the matter to the trial court for the purpose of resentencing, with consideration of the effect of the amendments to R.C. 2923.16 by virtue of enactment of R.C. 2923.111, as provided by R.C. 1.58. Bracey's remaining assignments of error, therefore, are rendered moot by this determination, applying plain error review.

{¶ 86} Based on the foregoing, I respectfully dissent, in part, and would vacate and remand only for resentencing, with the trial court to address the effect of the amendments to R.C. 2923.16 by virtue of enactment of R.C. 2923.111.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.